NicholsON, C. J.,
delivered the opinion of the Court.
In 1845, the will of ¥m. Moore was admitted to probate in the County Court of Gibson county, and John M. Moore appointed executor. The will contains the following clause:
“Item 7th. I give to my son, John M. Moore, in trust for the sole use and benefit of my daughter, Sarah E., and to her children, if she should have any, a tract of land containing 150 acres, etc., also four ne-groes of equal value with those I have given to my son William, two of said negroes to be selected by said Sarah E., and the other two Ny my executor, together with the like personal property given to my son John M., with one year’s provision. I desire that my daughter, Sarah E., shall be schooled, clothed, and boarded free of charge upon her separate property, but out of my estate until she arrive at the age of twenty-one years or marries; and should my daughter, the said Sarah E., die without any child or children, then the above specified property to return to my children and be equally divided among them.”
At the death of testator, Sarah E. was only eleven years of age. She intermarried with Philip E. Waddle, bore to him several children, and died, leaving complainants, her children, living. Before her death, Sarah E. and her husband, Philip E. Waddle, con *227 veyed the land, devised in the above clause, to AY. H. Ivie and S. T. Moore.
Complainants assert claim to the land under the 7th item of the will of AYm. Moore, their grandfather, upon the ground that upon the death of their mother Sarah E. the absolute title, with the 'right of possession, vested in them. Defendants resist their claim and insist that Sarah E. took a fee simple title to the land under said item, and that her conveyance was valid and effectual to pass the title to them.
The settlement of the contest depends upon the proper construction of the clause in the will under which both parties claim title. The only property involved in the controversy is the land, no question being raised by the pleadings as to the personal property. Our first duty is to ascertain the intention of the testator, as manifested by the language used by him, interpreted in its usual and ordinary sense. It was clearly the purpose of the testator to vest the legal title of the land in John M. Moore as trustee, and to cut off the marital rights of any husband that his daughter Sarah E., who was then unmarried, might have. The title was vested in the trustee for the sole use and benefit of his daughter Sarah E. So far the language is clear and unambiguous. Ho then adds: “and to her children if she should have any.” He either intended to give the land to the trustee for the sole use and benefit of his daughter and her children, or to the trustee for the sole use and benefit of his daughter, and then to give it to her children if she should have any. Giving to each *228 word its proper meaning, we are of opinion tbat tbe testator intended to give the land to the trustee for the sole use and benefit of his daughter; and if she should marry and have children, he then intended to give the land to them. He intended to give her also four negroes and the other personal property specified, to be allotted to her when she became twenty-one years of age or married — this allotment to be made by the executor, who was also her trustee — but until such allotment of her separate property she was to be supported and educated out of his general estate. After her separate estate should be allotted, the legal title was to remain in the trustee for her sole use and benefit; and if she should die without children, then the trustee was to return the property, to be equally divided among the testator’s children. When testator says, if my daughter should die without children, then the property to go over, the inference is clear that he meant if she died leaving children, then her children were to take. He does not so say in express terms, nor was it necessary, as he had already provided that the property was to be vested first in a trustee for the sole use of his daughter, and then in her children if she should have any.
There can be no doubt that the intention of the testator was to give to his daughter the equitable title to the land during her life, and at her death to give the legal title to any child or children she might then have, and if she should die without any children, the land was be divided equally among the surviving children of the testator.
*229 It is worthy of remark, that there is no word used in the clause under consideration, as to the usual and ordinary or even the technical meaning of which there is the least ambiguity. The draftsman evidently understood the proper use of language, and he has selected words so appropriate to convey the intention of the testator, that we find no difficulty in satisfactorily ascertaining it. Although the will contains fifteen clauses, we do not find any one of them in which the words “heirs,” or “issue,” or “heirs of the body,” have been used; but in every instance, the words employed are “child” or “children,” and whenever these words are used, they convey the ordinary meaning of those terms.
But it is argued for defendants, with much ability and earnestness, that as the daughter Sarah E. had no children at the date of the will or of its probate, the term “children” must be construed as synonymous with “issue,” or “heirs,” or “heirs of the body,” and hence, that it is to be taken as a word of limitation and not of purchase. In other words, it is insisted, that although it has been often held by this Court that the word “ children” is properly a word of purchase and not of limitations, yet that we shall violate a well recognized rule of property if we fail in the present case to construe it as a word of limitation.
It is conceded, that whenever the word “children” is used in such connection, or is so controlled by other words as to show clearly that it was intended as a word of limitation, we are bound to adopt that construction, but whenever the ordinary meaning of the *230 word is not so connected or controlled, it is invariably construed as a word of#purchase: Stubbs v. Stubbs, 11 Hum., 44; 4 Hum., 43; 3 Col., 538; 2 Red. on Wills, 336.
In the case of Booker v. Booker, 5 Hum., 505; Judge Green said: “ The term ‘ children ’ expresses the immediate offspring of the parent; neither in its vulgar or its legal sense is it expressive of remote descendants; to make it so mean, it must be coupled with other expressions which will give to it such a signification.”
In the case before us, the language is: “Should my daughter die without any child or children, then the property to be equally divided among my children.” What expression is found here which indicates, that the testator did not mean by “children” the immediate offspring of his daughter? He had already given the property to a trustee for the sole use and benefit of his daughter, and “to her children, if she should have any.” It is absolutely certain, that in this connection he used the word “ children ” in reference to the immediate offspring of his daughter— “child or children, if she should have any” — this means beyond controversy a child or children born of his daughter. ^hy then should a different meaning be given to the same words in the same clause? Most, manifestly his meaning was the same in both instances. He meant if his daughter should bear a child or children, such child or children should take the property upon the death of their mother, if any were then living — if no child or children of hers should be living *231 at her death, then the property to be equally divided among her surviving brothers and sisters. In the language of Judge Green, in the case of Booker v. Booker, “the entire clause is pregnant with evidence that the term ‘children’ is used in appropriate sense, to signify the immediate offspring of the testator.” The clause in that case was, that if any of testator’s-children should “die without issue, or should leave issue, which issue should die before coming of age, in either of these events, such portion of my estate, so-bequeathed to such child or children, is equally to be divided between my surviving children.”
On this clause Judge Green remarks: “Upon a dying without issue, the estate is to be equally divided between the surviving children. These words ‘surviving children’ are very expressive of the testator’s intention. In the event contemplated, the estate bequeathed to such child is to be equally divided between the surviving children. These terms in such juxtaposition show that ‘child’ and ‘children’ are employed in the same sense, to express a like relation to the testator. The contingency, then, is to happen within the life of some of the testator’s children', and is therefore definitely restricted with the time the law allows.”
It will be observed that the word “children” occurs three times in the clause before us. First, “her children if she should have any;” next, “die without any child or children;” and then, “my children.” That the testator meant by the first, the immediate offspring of his daughter, and by the last the immediate off *232 spring of himself, admits of no debate. It would be impossible to resist tbe conclusion, that he meant the same thing — immediate offspring, by the second use of the word. But the term “my children,” indicating the persons who were to take, upon the contingency of the death of his daughter without “children,” shows clearly that the persons who were to take in remainder, were in being when the will was made. This proves that the testator intended the property to go over to his own children, who were in being, upon the contingency of his daughter dying without immediate offspring then living. In the ease of Claiborne v. Lewis, 5 Yer., 368, the effect of the words “surviving children” in controlling the construction of the words “dying without issue,” is thus forcibly stated by Judge Haywood: “‘Die without issue’ when already there is a fee without these words, by the act of 1784, ch. 22, s. 14, are not in this State necessarily words of limitation, as in England they are to answer the intent, but may be taken to denote a future event. If it be asked why, in the case of personalty, these words are restrained by a limitation over to survivors, but in realty not, the answer is, because in personalty they can not make an estate tail, there being no such estate in a chattel. Then if there be no such estate in the realty in this State since the act of 1784, will not the word “survivors” be restrictive in the latter case, as well as the former?” ' A fortiori, do the words “surviving children” repel the attempt to construe “children” as synonymous with “issue” in order to create an estate tail.”
*233 The question then is reduced to the inquiry, is the limitation over in the 7th clause of the will, an estate tail, either express or implied, or is it a valid execu-tory devise? If the former, then the numerous authorities relied on by defendant’s counsel govern the case — if the latter, they have no application.
The rule relied on by defendant’s counsel, as applicable to the case, is thus stated by Preston on Estates, vol. 1, p. 263, and adopted in 4 Kent, and approved by Judge Reese in Polk v. Faris, 9 Yerg., 209: “Where any person takes an estate of freehold, legally or equitably, under a deed, will or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of an intervening estate, of a right of the same legal or equitable character, to his heirs, or heirs of his body, as a class of persons to take in succession, the limitation to the heirs entitles the ancestor to the whole estate.”
There are two distinct reasons why this rule can not govern the case before us. The first is, that the limitation in the 7th clause of the will is not to the heirs or heirs of the body of the daughter, to take as a class in succession, but to the children of the daughter who may be living at her death. This we have already shown. Hence the eases in which the word “children” have been construed to mean “heirs or heirs of the body or issue,” relied on in the argument, have no application.
The other reason is equally conclusive; it is, that the limitation to the children of the daughter, is not *234 of the same character of estate as that given to the daughter. The estate of the daughter is equitable— the legal estate being in the trustee — while the estate limited to the children is the absolute fee. The legal title was vested in the trustee for the purpose of protecting and securing the property to the daughter during her life, free from the marital rights of her husband. The purpose of the trust was accomplished upon the death of the daughter; at that time the legal title was to be vested in the children by the trustee: Ellis v. Fisher, 3 Sneed, 234; Smith v. Metcalf, 1 Head, 64; White v. Belote, 2 Head, 703.
But it is insisted for defendants, that if the rule in Shelley’s case is not applicable to the cause at the bar, then it falls within and is governed by the rule in Wild’s case. The doctrine of Wild’s case is, that “where lands are devised to a person and his children, and he has no child at the time of the devise, the parent takes an estate tail:” 6 Rep., 17; 2 Jarman on Wills, 307. This is not a rule of property, as in Shelley’s case, but a rule of construction. Because the rule in Shelley’s case was a rule of property, and was received in this State as part of the common law; it was recognized and enforced until it was abolished by the act of 1852. But the rule in Wild’s case, being only a rule for construing wills, resorted to in specfic cases to carry out the manifest intention of testators, it can have no other weight than as a judicial precedent. We are aware of no case in our own State, nor have we been referred to any, in which the rule has been recognized even as a rule of construction. Nor can *235 we see how it could be adopted as a rule of construction, since the abolition of estates tail by the act of 1784; and indeed it was emphatically repudiated by the reasoning of Judge Haywood in the case of Claiborne v. Lewis. The rule is, that the word “children,” which is properly a word of purchase, shall be construed to be a word of limitation, in order that thereby an estate tail may be created to carry out the intention of the testator. We are asked, in the case before us, to declare the word “children” to be a word of limitation, and thereby by construction to make the daughter of testator a tenant in estate tail, when by our statute the estate tail is forbidden and abolished as a canon of property. To do this, would be to make a mere arbitrary rule of construction prevail over a positive statutory rule of property.
But this objection out of the way, an insuperable objection in the way of applying the rule in Wild’s case is found in the fact, that the devise here is to a trustee for the sole and separate use of the daughter and to her children, and not directly to the daughter and her children. The reason of this rule is, that the gift in the devise being immediate to the children, and there being no children then in esse, the word children is construed as a word of limitation, to work out the testator’s intention through an estate tail. But in the case before us, the gift is not immediate to the daughter and her children, but the legal estate is given to a trustee and the equitable estate to the daughter. The reason, therefore, on which the rule in Wild’s case rests, does not exist here; and hence, *236 there is no necéssity for construing the word “children” to be a word of limitation for the purpose of effectuating the intention of the testator.
In conclusion, if we were disposed to follow the authorities to which we have been referred in the English Common Law and the Massachusetts Reports, we could not hold them as governing the construction of the word “children” in the clause under consideration, for the further reason that the gift is not immediately to the daughter and her children, as in the cases to which the rule has been applied; but, as we interpret the clause, the gift is to the sole and separate use of the daughter and to her children; that is, after her death to her children. Upon this interpretation of the clause, it is clear that the rule in Wild’s case has no application.
The only remaining question is, whether the limitation over in the will before us constitutes a valid exec-utory devise. “To constitute a valid executory devise, the contingency upon which it is to take effect must occur within a life or lives in being, and twenty-one years and a fraction of a year afterwards:” Booker v. Booker, 5 Hum., 508; 4 Kent, 271. When an executory devise is duly created, it is a species of entailed estate, to the extent of the authorized period of limitation. It is a stable and_ inalienable interest, and the first taker has only the use of the land or chattel pending the contingency mentioned in the will: 4 Kent, 271.
We have construed the clause in question as a limitation of the property over to the children of testator, upon the contingency of his daughter’s dying *237 without children living at her death. This constitutes a valid executory devise, and as the daughter died leaving complainants, her children, surviving her, the title to the property vested absolutely in them at that time.
The Chancellor so decreed, and we affirm his decree with costs.